**Opinion issued June 2, 2026**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-24-00067-CV

———————————

**TOUR PARTNERS LTD., Appellant**

**V.**

**JAY COHEN, Appellee**

---

**On Appeal from the 55th District Court**
**Harris County, Texas**
**Trial Court Case No. 2013-68181**

---

## MEMORANDUM OPINION

Jay Cohen sued Tour Partners Ltd. under the Texas Uniform Fraudulent Transfer Act (TUFTA). His claims arose from a real estate transaction: the sale of a warehouse to Tour Partners by Preston Realty Corporation[1]—a company in which

---

[1]     Preston Realty is not a party to this appeal.

Cohen previously owned stock. Cohen alleged that the sale was a fraudulent transfer under the TUFTA. As an affirmative defense, Tour Partners argued that res judicata barred the claims because a final judgment was rendered in a prior suit in which Cohen had asserted claims arising from the same transaction.

After a bench trial, the trial court rendered judgment in Cohen's favor against Tour Partners on his TUFTA claims. In its findings of fact and conclusions of law, the trial court rejected Tour Partners' affirmative defense of res judicata. Among its issues on appeal, Tour Partners asserts that the evidence conclusively established the res judicata defense. Because we agree, we reverse the trial court's judgment and render judgment that Cohen take nothing on his claims against Tour Partners.

## Background

### A.    The Transactions

Cohen, Suzanne Levin, and the Feld Trust each owned one-third of Preston Realty's stock. Preston Realty's primary asset was a piece of real property—a Houston warehouse (the Warehouse). In December 2003, Commerce Equities, Inc. entered into an agreement with the shareholders to purchase all of Preston Realty's stock for $1.2 million.

To finance the stock purchase, Preston Realty obtained a $822,250 loan from a bank. Preston Realty signed a deed of trust in the bank's favor, creating a lien on the Warehouse. From the loan, Levin and the Feld Trust were paid cash for their

2

stock shares. But Cohen did not receive cash for his shares. Instead, he agreed to accept a $400,000 promissory note from Commerce Equities as payment.

The stock purchase closed in early November 2004. The closing statement referred to the $400,000 promissory note, but Commerce Equities never issued a promissory note to Cohen.

A few weeks later, Cohen filed a document entitled "Subordination of Lien" in the real property records. The document, signed only by Cohen, stated that Cohen had a lien against the Warehouse subordinate to the bank's lien. Although Commerce Equities had not issued a promissory note, and no lien was recorded in Cohen's favor, the document described Cohen's subordinate lien as securing a $400,000 promissory note.

Over the next several years, Preston Realty failed to make payments on the loan. In March 2009, the bank sued Preston Realty for non-payment. Preston Realty's president, who had personally guaranteed the loan, paid part, but not all, of the loan's balance.

In January 2010, the bank issued a foreclosure notice. The notice stated that a foreclosure sale for the Warehouse was scheduled for February 2, 2010. The bank informed Preston Realty that the loan's pay-off amount was $340,514.67.

Tour Partners—a real estate investment company—agreed to pay off the loan in exchange for title to the Warehouse. On February 1, 2010, the day before the

3

foreclosure sale, Tour Partners paid off the loan. That same day, a document entitled "Special Warranty Deed" was filed in the real property records. It identified the Warehouse as the subject property, Preston Realty as the grantor, and Tour Partners as the grantee. In August 2013, Preston Realty executed a correction deed, which stated that it was "made in place of" the earlier 2010 "Special Warranty Deed." The correction deed added language of conveyance.

Tour Partners contracted with Ellington F Holdings (Ellington) to sell the Warehouse to Ellington for $1.85 million. Ellington's title insurer conducted a title search and found the Subordination of Lien filed by Cohen. The title insurer declined to issue a title policy and the sale fell through.

## B.     The Lawsuits

Related to the above events, Cohen has sued Tour Partners in two lawsuits.[2]

### 1.     *First Suit*

Cohen sued Tour Partners in July 2013. He alleged that, when he sold his shares in Preston Realty, he "was to be given a note dated November 2, 2004 in the original principal amount of $400,000 secured by a second lien deed of trust" on the Warehouse. Although he acknowledged that no lien was recorded in his favor,

---

[2]     Pre-dating the two suits, Cohen filed a suit against Preston Realty. Tour Partners was not a party to that suit. Cohen later nonsuited his claims against Preston Realty in that case. We do not discuss that suit because it is not relevant to the dispositive issue on appeal here.

Cohen asked the trial court to render judgment "establishing and enforcing his unrecorded deed of trust and lien claim against the [Warehouse]."

In December 2013, Cohen filed a second amended petition, adding Preston Realty to the suit. Cohen claimed that Preston Realty defrauded him by failing to give him a lien on the Warehouse to secure the $400,000 debt owed to him.

Cohen also claimed that Preston Realty, Tour Partners, and others conspired to defraud him by way of the 2010 sale of the Warehouse. Cohen alleged that, at the time of sale, Tour Partners had "actual knowledge" that Cohen was entitled to a lien against the Warehouse to secure the debt owed to him. He asserted that the sale of the Warehouse left Preston Realty without any assets to satisfy the debt.

Tour Partners later moved for summary judgment on Cohen's claims.

On October 31, 2014—the pleadings deadline set by the scheduling order—Cohen filed a supplemental petition to his second amended petition. In it, Cohen asserted that Tour Partners received the Warehouse as the result of a fraudulent conveyance. Tour Partners moved to strike the fraudulent conveyance claim, asserting that it was inadequately pleaded and could not be amended because the pleading deadline had passed.

On November 10, 2014, the trial court granted Tour Partners' motion for summary judgment, "dismissing with prejudice all causes of action and claims for relief" against Tour Partners in Cohen's second amended petition. Seven days

later—and before the trial court ruled on Tour Partners' motion to strike—Cohen nonsuited his claim for fraudulent conveyance. In his nonsuit notice, Cohen stated that he would file the fraudulent conveyance claim in a suit pending between the parties in the 55th District Court of Harris County. That suit is the instant suit, which we refer to below as the Second Suit.

On January 28, 2015, the trial court signed a final judgment in the First Suit. The final judgment incorporated (1) the summary judgment order dismissing Cohen's claims asserted in his second amended petition against Tour Partners with prejudice and (2) an order granting Cohen a default judgment against Preston Realty. The final judgment also memorialized Cohen's nonsuit of his fraudulent conveyance claim.

### 2. *The Second Suit*

Ellington initiated the Second Suit by suing Tour Partners in November 2013 based on the failed contract to buy the Warehouse. In July 2014, Tour Partners added Cohen to the suit as a third-party defendant. It alleged that the sale of the Warehouse fell through because of the Subordination of Lien document filed by Cohen and its inability to remove the title exception for it.

On November 17, 2014—the same day that Cohen nonsuited his fraudulent conveyance claim in the First Suit—Cohen counterclaimed against Tour Partners in the Second Suit, claiming that the transfer of the Warehouse from Preston Realty to

Tour Partners was a fraudulent conveyance under the TUFTA. Cohen alleged that, at the time of the transfer, he was Preston Realty's creditor and Preston Realty was his debtor. He asserted that, when Preston Realty sold the Warehouse to Tour Partners, it "did not receive a reasonably equivalent value in exchange for the transfer." He claimed that the transfer left Preston Realty without sufficient assets to satisfy the debt owed to him.

Tour Partners moved for summary judgment, asserting that the four-year statute of limitations barred Cohen's TUFTA claims. It argued that the Warehouse was transferred from Preston Realty to Tour Partners when the "Special Warranty Deed" was recorded in February 2010—more than four years before Cohen filed his TUFTA claims. The trial court agreed, granting summary judgment against Cohen based on limitations.

Tour Partners filed a supplemental motion for summary judgment, arguing that Cohen's TUFTA claims were barred by res judicata based on the final judgment in the First Suit. Tour Partners asserted that Cohen's fraudulent transfer claims—arising from Tour Partners' purchase of the Warehouse from Preston Realty—arose from the same transaction as Cohen's claims in the First Suit. Tour Partners pointed out that, in the First Suit, Cohen asserted that it had engaged in a fraudulent conveyance. Tour Partners also pointed out that Cohen made that claim in a supplement to his second amended petition without adding new factual allegations.

7

The trial court denied Tour Partners' supplemental motion without ruling on the merits of the motion. The court explained that it had already dismissed Cohen's claims based on limitations and declined to issue an "advisory opinion."

Cohen appealed the trial court's summary judgment to this Court, contending that limitations did not bar his TUFTA claims. *Cohen v. Tour Partners, Ltd.*, No. 01-15-00705-CV, 2017 WL 1528776, *1 (Tex. App.—Houston [1st Dist.] Apr. 27, 2017, no pet.) (mem. op.). We determined that the 2010 "Special Warranty Deed" document was not a deed as a matter of law because it "contain[ed] no words of conveyance" to show what interest in the Warehouse Preston Realty conveyed to Tour Partners. *Id.* at *6. Because it was not a valid deed, we concluded that the 2010 document "[did] not qualify as a TUFTA 'transfer' to begin the four-year claim period." *Id.* at *7. We held that the trial court erred by concluding that Cohen's TUFTA claims expired four years after the 2010 document was recorded. *Id.* We reversed the summary judgment and remanded the case to the trial court. *Id.* at *10.

On remand, Tour Partners renewed its motion for summary judgment based on res judicata. The trial court denied the motion without stating the basis.

By the time of trial, the only claims remaining were Cohen's claims against Tour Partners for fraudulent conveyance under TUFTA sections 24.005(a)(2) and 24.006(a). *See* TEX. BUS. & COM. CODE §§ 24.005(a)(2) (providing that transfer is fraudulent if made without receiving reasonably equivalent value in exchange for

transfer and debtor was either left with unreasonably small remaining assets or was about to incur debts beyond its ability to pay as they became due), 24.006(a) (providing that transfer is fraudulent if made without receiving reasonably equivalent value in exchange for transfer and debtor became insolvent as result).

The trial court conducted a bench trial on Cohen's TUFTA claims. At trial, Tour Partners pursued its affirmative defenses of limitations and res judicata. To prove res judicata, Tour Partners offered the following documents from the First Suit: (1) Cohen's second amended petition, (2) his supplemental petition, (3) his notice of partial nonsuit, and (4) the final judgment. He also offered Cohen's counterclaim petition from this suit.

The trial court rendered judgment in Cohen's favor, awarding him $400,000 in damages and pre- and post-judgment interest. The judgment also awarded Cohen his attorney's fees but did not specify the amount.

The trial court issued findings of fact and conclusions of law. They included a "finding of fact" that "Cohen's claims were not barred by [the First Suit]" and a conclusion of law that "Cohen's [TUFTA] claims [were] not barred by res judicata." Tour Partners requested additional findings of fact and conclusions of law, including findings regarding its res judicata defense, but none were issued.

9

Based on Tour Partners' motion to modify, the trial court amended the judgment to specify the amount of trial-level and contingent appellate attorney's fees awarded to Cohen and to insert a starting date for the pre-judgment interest.[3]

Tour Partners appealed the trial court's judgment. On appeal, Tour Partners raises two issues containing several sub-issues.

## Sufficiency of the Evidence

In one sub-issue, Tour Partners contends that the evidence conclusively establishes its res judicata defense.

### A.    Standard of Review

As the party asserting the affirmative defense of res judicata, Tour Partners had the burden of proving each of its elements. *See* TEX. R. CIV. P. 94; *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). When a party attacks the legal sufficiency of an adverse finding on which it has the burden of proof, the party must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). In reviewing a matter-of-law challenge, we first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. *Id.* If there is no evidence to support the finding, we then examine the entire record to determine if

---

[3]    When we refer to the trial court's judgment, we are referring to the trial court's amended judgment signed on March 1, 2024.

10

the contrary proposition is established as a matter of law. *Id.* We will reverse only if the party who bore the burden of proof conclusively establishes its claim. *Id.* A matter is conclusively established if reasonable people could not differ as to the conclusions to be drawn from the evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

## B.    Res Judicata

The doctrine of res judicata, or claim preclusion, bars causes of action that have already been fully adjudicated or that, with the use of diligence, could have been brought in the prior suit. *Barr v. Resol. Tr. Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 628 (Tex. 1992). The doctrine is necessary to bring an end to litigation, prevent vexatious litigation, maintain stability of court decisions, promote judicial economy, and prevent double recovery. *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007).

Texas courts apply the transactional approach to res judicata, which requires that claims arising out of the same subject matter be litigated in a single lawsuit. *Hallco Tex., Inc. v. McMullen Cnty.*, 221 S.W.3d 50, 58 (Tex. 2006) (citing *Barr*, 837 S.W.2d at 631). Under this approach, we examine the factual bases, not the legal theories, presented in the cases to determine whether the cases share the same set of operative facts. *Better Bus. Bureau of Metro. Hous., Inc. v. John Moore Servs., Inc.*, 500 S.W.3d 26, 40 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). To determine

whether the facts arose out of a single transaction, we consider whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a trial unit conforms to the parties' expectations. *Barr*, 837 S.W.2d at 631.

Res judicata requires proof of three elements: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action. *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 225 (Tex. 2022).

### 1. Prior final judgment

The record shows that the first element of res judicata was met. In the First Suit, the trial court[4] signed an order granting Tour Partners' motion for summary judgment and dismissing with prejudice all causes of action and claims for relief asserted by Cohen against Tour Partners in his second amended petition. Cohen later filed a notice of nonsuit, dismissing his claim for fraudulent conveyance. The trial court's order granting Tour Partners' motion for summary judgment and dismissing

---

[4] The 269th District Court was a court of competent jurisdiction to render the final judgment in the First Suit. As a district court with general jurisdiction, the 269th District Court had jurisdiction over the subject matter and the parties. *See* TEX. CONST. art. V § 8; TEX. GOV'T CODE § 24.007; *see also In re R.G.S.*, No. 09-22-00425-CV, 2024 WL 4986066, at *3 (Tex. App.—Beaumont Dec. 5, 2024, pet. denied) (mem. op.) (concluding that trial court, as district court with general jurisdiction, was court of competent jurisdiction for res judicata purposes).

Cohen's claims with prejudice was an adjudication on the merits. *See Hyundai Motor Co. v. Alvarado*, 892 S.W.2d 853, 854–55 (Tex. 1995) ("A partial summary judgment is a decision on the merits[.]"); *Mossler v. Shields*, 818 S.W.2d 752, 754 (Tex. 1991) ("[I]t is well established that a dismissal with prejudice functions as a final determination on the merits."). Although it was interlocutory, the summary-judgment order became final when the trial court signed the final judgment in the First Suit, incorporating the summary-judgment order and memorializing the nonsuit of Cohen's remaining claims. *See Iacono v. Lyons*, 6 S.W.3d 715, 716 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (explaining that partial summary judgment became final when court signed order of nonsuit).

We reject Cohen's argument that the nonsuit of his fraudulent conveyance claim meant there was not a final adjudication on the merits for res judicata purposes. We are mindful that, when an entire case is nonsuited without prejudice, res judicata does not bar re-litigation of the claims. *Epps v. Fowler*, 351 S.W.3d 862, 868 (Tex. 2011). However, when, as here, a plaintiff suffers an adverse judgment and voluntarily dismisses his remaining claims arising from the same subject matter (as discussed below), res judicata bars further litigation of those claims. *See Thompson v. Weaver*, 429 S.W.3d 897, 903 (Tex. App.—Tyler 2014, no pet.); *Jones v. Nightingale*, 900 S.W.2d 87, 90 (Tex. App.—San Antonio 1995, writ ref'd); *see also Portillo v. Cunningham*, 872 F.3d 728, 737 (5th Cir. 2017) (applying Texas law and

13

holding that res judicata barred claim because plaintiff nonsuited claim in first action after his other related claims in first action were dismissed with prejudice).[5]

Cohen also asserts that the final judgment in the First Suit was not a *prior* final judgment because it was rendered after he filed his TUFTA claims in this suit. We disagree. When two actions are pending, the first to proceed to final judgment will have preclusive effect. *See Mower v. Boyer*, 811 S.W.2d 560, 563 (Tex. 1991); *Estate of Maxey*, 559 S.W.2d 458, 461 (Tex. App.—Texarkana 1977, writ ref'd n.r.e.); *see, e.g.*, *Mathai v. Maxi Realty Corp.*, No. 01-14-00708-CV, 2015 WL 3485990, at *4 (Tex. App.—Houston [1st Dist.] June 2, 2015, no pet.) (mem. op.) (judgment rendered in second-filed case had preclusive effect over claims in first-filed case).[6] Here, the First Suit proceeded to judgment first.

---

[5]  As the *Portillo* court observed: "That rule makes sense. Otherwise, plaintiffs could use nonsuit to circumvent the res judicata bar by strategically nonsuiting any claims they wish to preserve for later actions. They could thus do precisely what res judicata forbids: serially litigate claims that ought to be decided together." *Portillo v. Cunningham*, 872 F.3d 728, 737 (5th Cir. 2017) (citing *Barr v. Resolution Tr. Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 631 (Tex. 1992)).

[6]  Cohen asserts that this suit was not a "second action" for purposes of the third element discussed below because both suits were "contemporaneously pending" until the final judgment was rendered in the First Suit. We disagree. A "second action" for res judicata purposes means a separate legal action in which the same claims are raised or could have been raised. There is no requirement that a judgment must be reached in the first action before the second action is filed to make it a "second action" for res judicata purposes. *See, e.g.*, *Mathai v. Maxi Realty Corp.*, No. 01-14-00708-CV, 2015 WL 3485990, at *4 (Tex. App.—Houston [1st Dist.] June 2, 2015, no pet.) (mem. op.) (affirming summary judgment in appellee's favor based on res judicata in case filed by appellant against appellee after appellee

## 2. *Identity of parties*

Regarding the second element—identity of the parties—the evidence showed, and the parties did not dispute, that Cohen and Tour Partners were parties in both suits. Thus, the second res judicata element was met.

## 3. *Same claims*

We turn to the third element: a second action based on the same claims as were raised or could have been raised in the first action. A comparison of Cohen's counterclaim petition in the Second Suit (this suit) with the second amended and supplemental petitions in the First Suit shows that the third element was established.

In his second amended petition in the First Suit, Cohen claimed that Preston Realty owed him $400,000 for the stock sale. He alleged that Preston Realty agreed to give him a promissory note for $400,000 to be secured by "a deed of trust lien" on the Warehouse. Cohen alleged that, in April 2010, he learned that a deed of trust had not been recorded to secure the debt and that the Warehouse "had purportedly been sold to Tour Partners." He claimed that, because the Warehouse was sold to Tour Partners, Preston Realty "no longer had assets available to satisfy the debt." He also alleged that, when it purchased the Warehouse, Tour Partners had "actual knowledge" of his claims and his interest in the Warehouse. Based on those alleged

obtained judgment in his favor in another suit that he filed against appellant while appellant's suit was still pending).

facts, Cohen claimed that Tour Partners and Preston Realty had conspired "to defraud [him] in the transaction involving the purported sale of the [Warehouse] or, alternatively, aided and abetted and knowingly participated in fraud."

In his supplemental petition, Cohen claimed that Tour Partners was "the recipient of a fraudulent conveyance." He did not allege any additional facts to support the claim and relied on the facts alleged in the second amended petition.

The trial court granted summary judgment and dismissed all of Cohen's claims in his second amended petition. Cohen chose to nonsuit his fraudulent conveyance claim asserted in the supplemental petition.

The facts alleged in Cohen's counterclaim petition to support his fraudulent conveyance claims under TUFTA arose out of the same core operative facts supporting his claims in the First Suit. Notably, Cohen raised a fraudulent conveyance claim in the First Suit. As in the First Suit, Cohen alleged in his counterpetition that Preston Realty owed him $400,000 from the stock sale and that the sale of the Warehouse to Tour Partners left Preston Realty without sufficient assets to satisfy the debt. He also alleged that Tour Partners had actual knowledge of the debt when it purchased the Warehouse.

Comparing the allegations between the two suits shows that they formed a convenient trial unit. *Barr*, 837 S.W.2d at 631. Cohen's nonsuit notice also indicated that he believed that as well. *See id.* In it, he nonsuited his fraudulent conveyance

16

claim and stated he would contemporaneously file it in this suit, which he did. Under the transactional approach, the claims in the two suits arose from the same subject matter. *See id.*

To defeat res judicata, Cohen pointed to the August 2013 correction deed. He argued that the correction deed was "a new fact" entitling him to counterclaim in this suit for fraudulent conveyance because the correction deed post-dated his initial pleading in the First Suit. To support his assertion, Cohen cited several cases that reflect that res judicata may not bar claims in a second action if those claims arise from a separate transaction occurring after the first action was filed. *See, e.g.*, *Ben C. Jones & Co. v. Gammel Statesman Publishing Co.*, 99 S.W. 701, 703 (Tex. 1907) (holding that breaches of continuing contract filed in second action were not barred by res judicata because breaches occurred after filing of first action).[7] However, the cited cases are inapposite.

Unlike the cited cases, the challenged claim here was raised in both the first and second actions. In the First Suit, Cohen filed his second amended petition after the correction deed was recorded. He then supplemented that pleading, asserting a fraudulent conveyance claim. In his nonsuit notice, Cohen dismissed that claim,

---

[7]  The other cases cited by Cohen are *Texas Oil & Gas Corp. v. Vela*, 429 S.W.2d 866, 874 (Tex. 1968); *Schumann v. Abernathy*, 442 S.W.2d 455, 457 (Tex. Civ. App.—Waco 1969, no writ); and *Reserve Life Insurance. Co. v. Shelton*, 415 S.W.2d 281, 285 (Tex. Civ. App.—Austin 1967, writ dism'd).

stating that he would refile it in the Second Suit, which he did the same day. This showed Cohen's understanding that the fraudulent conveyance claims in both suits arose out of the same subject matter. Given the circumstances presented here, the cited cases are neither controlling nor instructive.[8]

Cohen also asserted that he was entitled to file his fraudulent conveyance claims in this suit under the compulsory counterclaim rules found in the Rules of Civil Procedure. *See* TEX. R. CIV. P. 38(a), 97(a). However, res judicata gives a plaintiff one bite at the cause-of-action apple. *Dace v. Dace*, No. 01-09-00758-CV, 2011 WL 1326217, at \*4 (Tex. App.—Houston [1st Dist.] Apr. 7, 2011, no pet.) (mem. op.). And we can find no exceptions for compulsory counterclaims filed in a second action. Regardless of whether a plaintiff may procedurally assert a claim in a second action, res judicata will apply if its elements are proven. Even if there were three, four, or a dozen parallel lawsuits over the same transaction, once the first of them goes to final judgment, that judgment has preclusive effects.

In the trial court, Cohen raised the counter-affirmative defenses of judicial estoppel and waiver. Cohen argued that Tour Partners was estopped from asserting,

---

[8] Cohen also asserted that res judicata did not apply because Tour Partners moved to consolidate the suits, and the trial court in the First Suit denied the motion. Cohen contended that the denial meant that the facts alleged in the suits were too dissimilar for res judicata to apply. However, the trial court's order denying the motion does not serve as proof that the elements of res judicata were not met. The order, attached to Cohen's post-trial briefing, was not admitted into evidence at trial. And, even if it could be considered, it does not contain the basis for the denial.

and had waived, the defense of res judicata by moving to strike Cohen's fraudulent conveyance claim in the First Suit. He asserted that Tour Partners should not be permitted to successfully argue that res judicata bars his TUFTA claims after asserting in the First Suit that his fraudulent conveyance claim there should be struck due to pleading deficiencies that could not be amended after the pleading deadline. He asserted that, as a matter of equity, it would be unfair to apply res judicata under those circumstances.

"A party asserting an affirmative defense has the burden to plead, prove, and secure findings to sustain its affirmative defense." *Vance v. Popkowski*, 534 S.W.3d 474, 481 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). Here, Cohen did not request, and the trial court did not make, any findings regarding Cohen's counter-defenses of judicial estoppel and waiver. Nor did Cohen request additional or amended findings. Because Cohen did not secure findings to support his affirmative defenses, the affirmative counter defenses of judicial estoppel and waiver cannot be used to support the trial court's judgment. *See id.* (holding that, because appellees did not secure findings in support of their affirmative defenses of abandonment and waiver, "they waived these two defenses").

Moreover, Cohen did not prove judicial estoppel and waiver. "Judicial estoppel is a common law doctrine that prevents a party from assuming inconsistent positions in litigation." *Perryman v. Spartan Tex. Six Cap. Partners, Ltd.*, 546

S.W.3d 110, 117 (Tex. 2018). We agree with Tour Partners that its motion to strike Cohen's fraudulent conveyance claim in the First Suit based on pleading deficiencies and untimeliness is not inconsistent with seeking to dismiss his TUFTA claims in this suit based on res judicata. Because they involve different considerations and effects, seeking to strike a claim on purely procedural grounds in one suit is not inconsistent with seeking to dismiss it on substantive grounds, such as res judicata, in a later suit.

Tour Partners' motion to strike likewise did not waive its right to assert res judicata. Courts have recognized that the defense of res judicata may be waived in certain circumstances. *See, e.g.*, *City of Houston v. Martinez*, 725 S.W.3d 449, 460 (Tex. App.—Houston [14th Dist.] 2025, no pet.) (holding that res judicata defense against claims was waived because defendants effectively agreed to split those claims by successfully moving to sever them from main claims). "Res judicata does not bar a subsequent claim if 'the parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein.'" *Wagner v. Exxon Mobil Corp.*, 654 S.W.3d 613, 632 (Tex. App.—Houston [14th Dist.] 2022, pet. denied) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 26(1)(a) (1982) (citation modified)). Here, Tour Partners' motion to strike, filed before Cohen filed his TUFTA claims in the Second Suit, cannot be construed as either an agreement, or as acquiescence, to the filing of those claims.

20

We also reject Cohen's equitable argument that applying res judicata to his TUFTA claims is unfair because he never had an opportunity to litigate them in the First Suit. Cohen's argument derives from the fact that the pleading deadline had passed under the scheduling order in the First Suit when Tour Partners filed its motion to strike his fraudulent conveyance claim, thus affecting his ability to replead there. He intimates that he could only litigate his claims by nonsuiting the fraudulent conveyance claim and raising it in this suit. We disagree.

In the First Suit, Cohen asserted his fraudulent conveyance claim in the supplement to his second amended petition. Cohen filed the supplemental petition on the day the pleading deadline expired. But the second amended petition was filed 10 months before the deadline, and the record does not show that Cohen was prevented from supplementing the second amended petition before the expiration date. Nor does the record show that Cohen sought leave of court to amend the supplemental petition after Tour Partners moved to strike the claim. *See* TEX. R. CIV. P. 63 (providing that party may seek leave of court to amend pleadings after deadline imposed by scheduling order). Instead, after the trial court signed a summary judgment order dismissing the claims he asserted in his second amended petition with prejudice, Cohen chose to nonsuit his fraudulent conveyance claim and file it in this suit. Given the record, we disagree that principles of equity preclude application of res judicata. *See John Moore Servs.*, 500 S.W.3d at 42–43 (rejecting

21

argument that res judicata should not apply as matter of equity because defendant's litigation strategy prevented it from amending its pleading in first suit).

We conclude that Tour Partners conclusively established every element of its res judicata defense as a matter of law. *See Dow Chem.*, 46 S.W.3d at 241. Accordingly, we sustain Tour Partners' challenge to the trial court's contrary determination.[9]

## Conclusion

We reverse the judgment of the trial court and render judgment that Cohen take nothing on his claims against Tour Partners.

David Gunn
Justice

Panel consists of Chief Justice Adams and Justices Gunn and Guiney.

---

[9] We need not reach Tour Partners' other issues and sub-issues challenging the trial court's judgment. *See* TEX. R. APP. P. 47.1.

22