**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| DAVID WONG, in his capacity as Trustee of the Anaplex Corporation Employee Stock Ownership Plan, *Plaintiff-Appellant*, | No. 19-56289 |
| | D.C. No. 2:18-cv-04468-SJO-AFM |
| v. | |
| DANETTE K. FLYNN-KERPER, as Executor of the Estate of Bernard M. Kerper; DOES, 1-20, inclusive, *Defendants-Appellees*. | OPINION |

Appeal from the United States District Court
for the Central District of California
S. James Otero, District Judge, Presiding

Argued and Submitted January 14, 2021
Pasadena, California

Filed June 7, 2021

Before: Michelle T. Friedland and Mark J. Bennett, Circuit
Judges, and Frederic Block,<sup>*</sup> District Judge.

Opinion by Judge Bennett

---

* The Honorable Frederic Block, United States District Judge for the Eastern District of New York, sitting by designation.

# SUMMARY[**]

## ERISA

The panel reversed the district court's dismissal, on the ground of equitable estoppel, of an ERISA action in which David Wong, Trustee of the Anaplex Corporation Employee Stock Ownership Plan, sought equitable and declaratory relief against Danette K. Flynn-Kerper, the holder of a promissory note from Anaplex.

Bernard Kerper, former trustee of the ESOP and late husband of Flynn-Kerper, acquired the promissory note in exchange for shares of Anaplex stock he sold to the ESOP. Alleging that the ESOP had paid greater than "adequate consideration" for the shares, Wong sought an adjustment to the purchase price and a declaration that the ESOP had overpaid. Flynn-Kerper moved to dismiss, arguing that Wong was equitably estopped from asserting his claims against her, based on an agreement between them that she alleged settled a prior lawsuit in which she had alleged Anaplex's failure to repay promissory notes, including a note that Anaplex issued in connection with the challenged stock sale. The district court granted the motion to dismiss, concluding that ERISA did not bar promissory or equitable estoppel because Flynn-Kerper was not making a claim pursuant to the ERISA agreement, but instead was seeking to rebuff Wong's claim for reformation of the promissory note.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Reviewing under a summary judgment standard, the panel held that Flynn-Kerper could not equitably estop Wong, the ERISA Trustee, because doing so would contradict the clear terms of the ESOP. The panel held that, in addition to satisfying the traditional equitable estoppel requirements, a party bringing a federal equitable estoppel claim in the ERISA context must also allege: (1) extraordinary circumstances; (2) that the provisions of the plan at issue were ambiguous such that reasonable persons could disagree as to their meaning or effect; and (3) that the representations made about the plan were an interpretation of the plan, not an amendment or modification of the plan. The panel held that a party cannot maintain a federal equitable estoppel claim against a trust fund where recovery on the claim would contradict written plan provisions. Here, if Wong were correct that the Anaplex shares were overvalued during an appraisal, applying equitable estoppel would require Wong to pay Flynn-Kerper greater than the fair market value of the shares on the date of purchase. This would contravene Section 6(d) of the ESOP, which required that the shares be purchased at fair market value on the date of purchase. Joining the Fourth Circuit, the panel held that the defensive use of equitable estoppel is barred when estopping the plaintiff would contradict an ERISA plan's express terms. The panel therefore reversed the district court's judgment and remanded.

## COUNSEL

Marc S. Schechter (argued) and Corey F. Schechter, Butterfield Schechter LLP, San Diego, California, for Plaintiff-Appellant.

Shannon C. Papazis (argued) and Lauren E. Martin, Ferruzzo & Ferruzzo, LLP, Newport Beach, California, for Defendant-Appellee.

---

# OPINION

BENNETT, Circuit Judge:

In this ERISA case, Defendant Danette Flynn-Kerper succeeded in equitably estopping ERISA Trustee Plaintiff David Wong in his suit seeking equitable and declaratory relief, even though her equitable estoppel claim contradicted the written provisions of the ERISA plan. But "a party cannot maintain a federal equitable estoppel claim against a trust fund where recovery on the claim would contradict written [ERISA] plan provisions," *Greany v. W. Farm Bureau Life Ins.*, 973 F.2d 812, 821 (9th Cir. 1992), or where it "would, as a practical matter, result in an amendment or modification of a plan," *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 956 (9th Cir. 2014).

Flynn-Kerper tries to reframe the issue as whether a *defendant* can equitably estop a *plaintiff* contrary to the terms of an ERISA plan. This is a distinction without a difference. "The actuarial soundness of pension funds is, absent extraordinary circumstances, too important to permit trustees to obligate the fund to pay pensions to persons not entitled to them under the express terms of the pension plan," *id.* (citation omitted), whether those "persons" be plaintiffs or defendants. Flynn-Kerper cannot equitably estop the ERISA Trustee from affirmatively enforcing the terms of the ERISA plan. For this and other reasons, we reverse.

## I. FACTS

Wong, in his capacity as Trustee of the Anaplex Corporation Employee Stock Ownership Plan (ESOP), is suing Flynn-Kerper, in her individual capacity as the present holder of a $1,000,654.20 promissory note from Anaplex.

Bernard Kerper, the former trustee of the ESOP and the late husband of Flynn-Kerper, originally acquired that promissory note in April 2015, in exchange for shares of Anaplex stock he sold to the ESOP. Kerper—negotiating the purchase price for both himself and the ESOP—based the purchase price for this conflicted transaction on a valuation conducted by independent appraiser Brian Turner. Turner determined the fair market value of the Anaplex shares, in seeming compliance with the ESOP's requirements. In particular, consistent with the ERISA requirements for transactions between an ERISA trust and its trustee,[1] Section 6(d) of the ESOP provides:

> Purchases of Company Stock by the Trust will be made at a price which . . . does not exceed the fair market value of such Company Stock . . . . [I]f the purchase of Company Stock is from a "disqualified

---

[1] Section 406(a)(1)(A) of ERISA defines the "sale . . . of any property between the plan and a party in interest" as a prohibited transaction. 29 U.S.C. § 1106(a)(1)(A). Yet § 408(b)(17)(A) makes an exception for such a transaction where "the plan receives no less, nor pays no more, than adequate consideration." *Id.* § 1108(b)(17)(A). And § 408(e)(1) makes an exception for the "acquisition . . . by a plan of [company shares] . . . if such acquisition . . . is for adequate consideration." *Id.* § 1108(e)(1). Section 3(18) defines "adequate consideration" as "the fair market value of the asset as determined in good faith by the trustee or named fiduciary pursuant to the terms of the plan." *Id.* § 1002(18).

person" as defined in Code Section 4975(e)(2), the fair market value shall be determined as of the date of purchase.[2]

To ensure a proper determination of fair market value, the ESOP also provides that "[t]he determination of fair market value . . . shall be made by an independent appraiser."

Although Kerper seemed to follow these requirements by hiring Turner to conduct an independent valuation of the shares, Wong alleges that the ESOP paid more than fair market value for Kerper's shares. First, Wong claims that Turner was unaware of an omission in Anaplex's accounting records caused by Kerper. Kerper had written checks to himself—or instructed employees to issue checks to or make payments for him—out of Anaplex's general checking account. This resulted in Kerper owing Anaplex more than $1,000,000, a debt that was carried on Anaplex's books as an asset. Wong alleges that at the time Anaplex hired Turner to value the shares, Kerper knew that even though the debt was carried on the books as a real asset of Anaplex, the debt was in default and would be uncollectible by the time of the April 2015 transaction. Wong also alleges that Kerper knew that no one had informed Turner of that fact. Thus, according to Wong, Kerper knew that Turner's appraisal necessarily overvalued the company by more than $1,000,000, the difference between a debt that was fully collectible and one that was in default and uncollectible. Wong contends that when Kerper died, four months after the

---

[2] The parties do not dispute that Kerper was a "disqualified person" and therefore fair market value should have been determined as of the date of purchase.

April 2015 sale, the uncollectible amount he owed Anaplex was $1,085,876.29 plus interest.

Second, Wong alleges that Kerper failed to disclose to Turner that Anaplex was being investigated by the U.S. Environmental Protection Agency (EPA) and was thus incurring hundreds of thousands of dollars in legal fees and facing hundreds of thousands of additional dollars in potential fines and penalties at the time of the valuation, further contributing to Turner's overvaluing the shares.

Wong alleges that without this information, Turner's valuation was "materially flawed" and resulted in a purchase price in excess of the fair market value—contrary to the ESOP's terms.  In his declaration, attached to Wong's opposition to the motion to dismiss, Turner stated that when he prepared the valuation, he did not know that the loans—which he treated as assets of Anaplex—were in default and would become legally uncollectible prior to the April 2015 sale.  He also stated he did not know of the EPA investigation.  He explained that both pieces of information would have been material to his valuation and would have resulted in a valuation reflecting a reduced value of the shares, which were probably "worth significantly less than the $93.87 purchase price used by Mr. Kerper."

Wong thus brought this action in May 2018.  He sought equitable relief pursuant to 29 U.S.C. § 1132(a)(3)—ERISA § 502(a)(3)—because the ESOP had paid greater than "adequate consideration" for the shares.  Wong sought an adjustment to the purchase price and a declaration that the ESOP had overpaid.

Flynn-Kerper moved to dismiss for failure to state a claim.  She argued that Wong was equitably estopped from asserting his claims against her, based on an agreement

between them that she alleged settled a prior lawsuit. Flynn-Kerper had sued Anaplex in state court in 2016, alleging Anaplex's failure to repay various promissory notes, including the April 2015 note that Anaplex issued in connection with the challenged stock sale. Wong and Anaplex then entered into a Note Repayment Agreement (NRA) with Flynn-Kerper, (1) establishing a new repayment schedule for the April 2015 promissory note and (2) requiring Flynn-Kerper to dismiss her first four causes of action (but not her claim for overdue payments on the April 2015 note). In October 2017, Flynn-Kerper dismissed all her claims. Though the NRA does not specify whether the required dismissals were to be with or without prejudice, Flynn-Kerper dismissed *without* prejudice, including the claim for overdue payments on the April 2015 note.

Flynn-Kerper and Wong do not agree on four facts relating to the NRA. First, regarding Wong's *intent* in entering the NRA, Flynn-Kerper argues that Wong entered the agreement to "confirm" the amount owed and the ESOP's obligation to pay it. Wong argues that the "NRA did nothing more than acknowledge the original obligation of the ESOP under the Promissory Note" and "in no way . . . 'confirmed[]' . . . that the Purchase Price represented no more than adequate consideration for the Shares as of the Transaction date."

Second, regarding *Wong's knowledge* when entering the agreement, Flynn-Kerper argues that "Wong was on notice of the unenforceability of the debt given the State Action was actively litigating the propriety and enforceability of that alleged debt," and that the "same can be said of Wong's knowledge of the EPA investigation, fines, and litigations." Wong responds that it was his "honest belief . . . at the time he entered into the NRA that the Debt would be recovered,"

and that "although [he] was aware of the *existence* of the EPA investigation" prior to entering the NRA, he was unaware of Kerper's *failure to report* that investigation to Turner, the pertinent fact for purposes of this litigation, until later.

Third, regarding *Flynn-Kerper's knowledge* when entering the agreement, Flynn-Kerper asserts (though not in a declaration) that she "never would have signed the NRA if she were aware [Wong] intended not to pay her yet continue to litigate the value of the Note owed to her." Wong counters that it "was known to [Flynn-Kerper] at the time she dismissed the State Case . . . that the ESOP would most likely be bringing a federal claim challenging the Purchase Price of the Shares," citing language in the NRA that he believes "expressly retained . . . the right to later bring claims."[3]

Finally, regarding Flynn-Kerper's *reliance* on the NRA in dismissing her claims in the state action, she argues she did so "[a]s a result of and in reliance upon the NRA and negotiations." Wong responds that "it cannot reasonably be argued that [Flynn-Kerper] reasonably and foreseeably relied on, or was enticed by, the NRA when she voluntarily chose to dismiss claims in the State Case." He bases this assertion on (1) Flynn-Kerper's five-month delay between entering the NRA and filing the request for dismissal

---

[3] Wong points to language in the NRA stating that "[t]he Parties hereby acknowledge and agree that [the NRA] does not fully settle all outstanding claims existing between the Executor, the ESOP, and Anaplex Corporation." He also points to language stating that "payments shall continue to be made to [Flynn-Kerper] until further . . . order of the Court" and that "[n]o modification, amendment or waiver of any of the [NRA] provisions . . . shall be binding . . . unless . . . ordered by the Court."

(despite that the NRA required her to dismiss the first four causes of action in five days); (2) the fact that the NRA did not require her to dismiss the cause of action involving the April 2015 note; (3) the fact that Flynn-Kerper dismissed *all* the claims *without prejudice* in the state action, including the cause of action involving the April 2015 note;[4] and (4) her willingness to dismiss the case even after receiving an email from Wong's counsel one day prior stating, "the amount due on the note is not being warrantied that it is not subject to change to the extent the [ESOP] over-paid."[5]

Other than the argument that Flynn-Kerper did not rely on the NRA in dismissing her claims, Wong raised these factual disputes in his opposition to the motion to dismiss, which he supported with his declaration, as well as declarations from Turner and the president of Anaplex. Wong also requested that the district court take judicial notice of the state court decision finding Kerper's debt to Anaplex legally uncollectible *after* the parties entered the NRA.

The district court granted Flynn-Kerper's motion to dismiss without leave to amend, acknowledging the factual disagreements between Wong and Flynn-Kerper but finding

---

[4] At argument, we asked Flynn-Kerper's counsel whether the NRA required dismissal with or without prejudice. However, she was unable to answer, even though it is obvious that whether the NRA's dismissal clause required permanent or temporary dismissal of claims is relevant to whether the NRA settled the ESOP's note repayment obligations.

[5] Furthermore, the evidence of Flynn-Kerper's *knowledge* that Wong might later bring a lawsuit relating to the April 2015 promissory note is also relevant to whether she *relied* on the NRA when she dismissed her claims in the state action.

Wong's arguments "unconvincing."**[6]**  The district court thus concluded:

> [T]here is *no question* that [Wong] made a clear and unambiguous promise to pay [Flynn-Kerper the outstanding balance on the April 28, 2015 note, plus interest.  Flynn-Kerper] reasonably and foreseeably relied on this promise when she voluntarily dismissed her various claims in state court.  Permitting [Wong] to now renege on this agreement and reform the promissory note would punish [Flynn-Kerper] for her reliance on [Wong's] representation.  This is an impermissible outcome.

Wong then filed a motion for reconsideration, raising many of the same arguments as in his opposition to the motion to dismiss, along with several new ones: (1) that a trust may not be equitably estopped if doing so contradicts written ERISA plan provisions; and (2) that Flynn-Kerper did not rely on the NRA in dismissing all of her state court claims (for the reasons already discussed).

The district court addressed each of these arguments on the merits, including those raised for the first time in the motion for reconsideration, and it denied the motion. Regarding the issue of ERISA preemption, the district court adopted Flynn-Kerper's position that ERISA "does not bar

---

**[6]** The district court left almost all of Wong's arguments unaddressed, including that the NRA did "not fully settle all outstanding claims existing between" him and Flynn-Kerper, and that the NRA did not require Flynn-Kerper to dismiss the claim pertaining to the April 2015 promissory note.

promissory or equitable estoppel in this context," where "Defendant is not making a claim pursuant to the [ERISA] agreement, but is instead seeking to rebuff Plaintiff's own claim for reformation of a promissory note." According to the district court, "estoppel [has] *no effect whatsoever* on the plan's written provisions" in such a scenario.

Wong now appeals to this court, where we review the Rule 12(b)(6) dismissal de novo. *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 864 (9th Cir. 2016).

## II.  DISCUSSION

When "matters outside the pleadings are presented to and not excluded by the court" on a Rule 12(b)(6) motion, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Thus, because both parties submitted exhibits, and because Wong submitted declarations, we look at the findings of the district court under a summary judgment standard. Under that standard, a district court may dismiss a case only if there is "no genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), viewing the evidence "in the light most favorable to the opposing party," *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

Equitable estoppel applies if the party to be estopped knew the facts and intended for his conduct to be acted on, and if the party asserting estoppel was ignorant of the true facts and relied on the other party's conduct to her injury. *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1096 (9th Cir. 1985), *abrogated on other grounds as recognized by Watkins v. Westinghouse Hanford Co.*, 12 F.3d 1517 (9th Cir. 1993). Thus, applying equitable estoppel to Wong's claim would raise questions about Wong's knowledge and intent when entering the NRA, and Flynn-Kerper's

knowledge when entering the NRA and reliance on the NRA in dismissing her claims in the state action. All of these are factual issues. *See Simmons v. United States*, 805 F.2d 1363, 1368 (9th Cir. 1986) (knowledge is an issue of fact); *Nat'l Union Fire Ins. v. Argonaut Ins.*, 701 F.2d 95, 97 (9th Cir. 1983) (contractual intent is an issue of fact); *Atkins, Kroll (Guam), Ltd. v. Cabrera*, 295 F.2d 21, 23 (9th Cir. 1961) (reliance is an issue of fact). And all are subject to genuine dispute. Under the appropriate Rule 56 standard, then, even assuming estoppel principles were available in the ERISA context presented here, the district court could not equitably estop Wong's claims at this stage of the proceedings merely because it found Wong's position "unconvincing."[7]

---

[7] The same holds true for Flynn-Kerper's arguments that we can affirm on grounds not addressed by the district court. For example, Flynn-Kerper argues that we can dismiss this case under the doctrine of judicial estoppel, which bars inconsistent positions by the same party in different court proceedings. But the parties have a factual disagreement about whether the NRA reflects a prior inconsistent position on Wong's part. *See New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (naming clear inconsistency in a party's earlier and later positions before a court as one of "several factors typically inform[ing] the decision whether to apply [judicial estoppel] in a particular case"). This factual dispute cannot be resolved at this stage of the proceedings.

Flynn-Kerper also argues that Wong should be barred from seeking equitable relief because he has "unclean hands" and acted in "bad faith," characterizing Wong's lawsuit as "nothing more than the ESOP's devious attempt to completely avoid its contractual obligation to pay for stock that it purchased from [Kerper]." But whether Wong has "unclean hands" or acted in bad faith turns on his intent in entering the NRA, as well as his knowledge before doing so. *See Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir. 1987) ("To prevail [on a defense of unclean hands], the defendant must demonstrate that the plaintiff's conduct is inequitable . . . .").

But more fundamentally, the district court also erred in its ERISA analysis. Flynn-Kerper cannot equitably estop Wong, the ERISA Trustee, because doing so would contradict the clear terms of the ESOP. "[F]ederal equitable estoppel principles can, *in certain circumstances*, apply to *some* claims arising under ERISA."**[8]** *Greany*, 973 F.2d at 821 (emphasis added). However, in addition to satisfying the traditional equitable estoppel requirements, a party bringing a federal equitable estoppel claim in the ERISA context must also allege: "(1) extraordinary circumstances; (2) that the provisions of the plan at issue were ambiguous such that reasonable persons could disagree as to their meaning or effect; and (3) that the representations made about the plan were an interpretation of the plan, not an

---

Finally, Flynn-Kerper argues that Wong's claims are barred by the statute of limitations, which she believes expired on April 28, 2018, at the latest. But again, whether the statute of limitations has run on Wong's claim likely turns, at least in part, on when Wong acquired the knowledge that Turner's valuation was too low and whether Kerper concealed information, which are both disputed facts. *See* 29 U.S.C. § 1113 ("No action may be commenced under this subchapter . . . after . . . three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation; except that in the case of . . . concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.").

**[8]** In contrast, promissory estoppel never applies in the ERISA context. *See DeVoll v. Burdick Painting, Inc.*, 35 F.3d 408, 412 (9th Cir. 1994). Wong contends that the district court committed reversible legal error by applying promissory estoppel, rather than equitable estoppel. It is unclear from the district court's decision whether it intended to apply equitable estoppel but used the wrong terminology, or whether it intended to apply the related doctrine of promissory estoppel, which would have been an error. We assume, therefore, that the reference to promissory estoppel was a mistake in terminology. But for the reasons explained below, applying equitable estoppel in this context was likewise error.

amendment or modification of the plan." *Gabriel*, 773 F.3d at 957 (quotation marks and citation omitted). "[A] party cannot maintain a federal equitable estoppel claim against a trust fund where recovery on the claim would contradict written plan provisions." *Greany*, 973 F.2d at 821.

The policy concerns motivating these requirements are straightforward. "The actuarial soundness of pension funds is, absent extraordinary circumstances, too important to permit trustees to obligate the fund to pay pensions to persons not entitled to them under the express terms of the pension plan." *Gabriel*, 773 F.3d at 956 (citation omitted). "If the effective terms of the plan may be altered by transactions between officers of the plan and individual plan participants . . . , the rights and legitimate expectations of third parties to retirement income may be prejudiced." *Bloemker v. Laborers' Loc. 265 Pension Fund*, 605 F.3d 436, 440 (6th Cir. 2010) (citation omitted). Even if the use of equitable principles might foster the fair treatment of one litigant, we will not use those principles to modify the plan and thereby unfairly treat the other plan participants. *Cf. Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1133 (9th Cir. 2013) ("The 'linchpin' for equitable estoppel is fairness.").

Here, allowing Flynn-Kerper to assert her equitable estoppel claim against Wong would contradict the clear terms of the ESOP. If Wong is correct that Turner overvalued the Anaplex shares during his appraisal, applying equitable estoppel would require Wong to pay Flynn-Kerper greater than the fair market value of the shares on their date of purchase. This would contravene Section 6(d) of the ESOP, which requires that the shares be purchased at fair market value on the date of purchase.

Flynn-Kerper contends that the "*defense* of estoppel is never addressed by the body of case law Wong cites to." She tries to distinguish her use of equitable estoppel against Wong by emphasizing that she is using it as "a shield to protect against a claim asserted by the ESOP," rather than "an offensive tool to extract benefits from the plan." While our circuit has yet to decide whether a defense of equitable estoppel is barred in an ERISA case brought by the ERISA plan, the same reasons for prohibiting equitable estoppel apply to both the affirmative use and the "defensive" use. Regardless of whether it is a plaintiff or a defendant who seeks to estop a trustee from enforcing an ESOP's terms, such estoppel would come at the expense of plan participants, who have relied on the plan terms and who are not responsible for the conduct that gave rise to the claimed estoppel.[9] *See Bloemker*, 605 F.3d at 440.

Furthermore, were it relevant, the distinction Flynn-Kerper draws between the use of equitable estoppel as an "offensive tool" and equitable estoppel as a "shield" would be inapplicable here. Wong is acting preemptively in advance of Flynn-Kerper's attempt to collect on the note. If Wong had done nothing and refused to pay on the note, Flynn-Kerper would have had to sue again to collect. Wong would have interposed the ESOP terms as a defense, and Flynn-Kerper would have argued that Wong was equitably estopped. That Wong acted first does not change the analysis. A party, whether a plaintiff or a defendant, cannot

---

[9] "[E]stoppel requires reasonable or justifiable reliance by the party asserting the estoppel." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 404 (6th Cir. 1998) (en banc). A "party's reliance can seldom, if ever, be reasonable or justifiable if it is inconsistent with the clear and unambiguous terms of plan documents available to or furnished to the party." *Id.*

use equitable estoppel to contradict the express terms of an ERISA plan in litigation with the plan.**[10]**

In so holding, we join the Fourth Circuit, which bars the defensive use of equitable estoppel when estopping the plaintiff would contradict an ERISA plan's express terms. *See Ret. Comm. of DAK Ams. LLC v. Brewer*, 867 F.3d 471, 485 (4th Cir. 2017). And we defer to "ERISA's focus on what a plan provides," consistent with Supreme Court precedent. *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 100 (2013) (declining to apply "equitable defenses alleging unjust enrichment," *id.* at 95, when doing so would contradict "the plan's clear terms," *id.* at 98, and noting that this holding "fits lock and key with ERISA's focus on what a plan provides," *id.* at 100). Equitable estoppel has no place

---

**[10]** Flynn-Kerper cites two cases for the proposition that ERISA plans should not bar equitable claims by *third parties*. *See The Meadows v. Emps. Health Ins.*, 47 F.3d 1006, 1009 (9th Cir. 1995); *Cath. Healthcare West-Bay Area v. Seafarers Health & Benefits Plan*, 321 F. App'x 563, 564 (9th Cir. 2008). But Flynn-Kerper is not a "third party" here. As discussed above, her husband was the former trustee of the ESOP and allegedly withheld information that would have materially affected the valuation of his shares. "The key to distinguishing between what ERISA preempts and what it does not lies . . . in recognizing that the statute comprehensively regulates certain *relationships*: for instance, the relationship between plan and plan member, between plan and employer, between employer and employee . . . , *and between plan and trustee*." *Gen. Am. Life Ins. v. Castonguay*, 984 F.2d 1518, 1521 (9th Cir. 1993) (second emphasis added). Thus, ERISA supersedes laws and equitable principles that would otherwise interfere with a trustee's relationship to the trust, given that "ERISA already regulates the trust-trustee relationship." *Id.* at 1522. That Flynn-Kerper is a successor in interest to a prior trustee—her late husband—who is alleged to have improperly benefited from an overvaluation of the shares, rather than the original trustee, does not alter the conclusion that she is a non–third party whose relationship to the ESOP is governed by the ESOP's terms.

at any stage in this litigation, and the district court erred in dismissing the case based on it.[11]

## REVERSED AND REMANDED.[12]

---

[11] Flynn-Kerper does not argue that Wong waived this issue by failing to raise it until his motion for reconsideration. Flynn-Kerper thus waived the defense of waiver. *See Gallardo v. United States*, 755 F.3d 860, 865 (9th Cir. 2014) ("Because the [appellee] failed to argue waiver in its answering brief, its waiver argument is itself waived."). Even were that not the case, "we may exercise discretion to consider a waived issue in certain cases, one such case being when the issue presented is a pure question of law." *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 59 F.3d 902, 912 (9th Cir. 1995). Because ERISA preemption is a question of law, we may exercise our discretion to consider the issue on appeal—especially given that the district court had the opportunity to consider and did address the issue on its merits in the order denying the motion for reconsideration. *See PFS Distrib. Co. v. Raduechel*, 574 F.3d 580, 598 (8th Cir. 2009).

[12] Wong also challenges the district court's denial of his motion for leave to amend. In light of our reversal of the dismissal of Wong's complaint, we need not decide whether the district court abused its discretion by denying Wong's motion. But we note that district courts should apply Rule 15(a) liberally, particularly when no answer has been filed, as was the case here. *See Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) ("[L]eave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.").