**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| CRAIG MOSKOWITZ, on behalf of himself and all others similarly situated, *Plaintiff-Appellant*, v. AMERICAN SAVINGS BANK, F.S.B., *Defendant-Appellee.* | No. 20-15024 D.C. No. 1:17-cv-00299-HG-RT OPINION |

Appeal from the United States District Court
for the District of Hawaii
Helen W. Gillmor, District Judge, Presiding

Submitted February 11, 2021[*]
San Francisco, California

Filed June 10, 2022

Before: Kim McLane Wardlaw and Carlos T. Bea, Circuit Judges, and James David Cain, Jr.,[**] District Judge.

Opinion by Judge Bea;
Partial Concurrence and Partial Dissent by Judge Wardlaw

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[**] The Honorable James David Cain, Jr., United States District Judge for the Western District of Louisiana, sitting by designation.

## SUMMARY[***]

### Telephone Consumer Protection Act

In an action brought under the Telephone Consumer Protection Act by Craig Moskowitz, the panel affirmed the district court's summary judgment in favor of defendant American Savings Bank, F.S.B.; affirmed the district court's award of costs under Federal Rule of Civil Procedure 41(d); and reversed the district court's award of attorney's fees as "costs" under Rule 41(d) as a matter of right.

Moskowitz alleged that ASB sent text messages to his mobile phone without the consent required by the TCPA. Affirming the district court's summary judgment, the panel held that under *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037 (9th Cir. 2017), messages sent by Moskowitz's phone to ASB's "short code" number provided the required prior express consent for ASB's responsive messages.

The district court granted ASB's motion for an award of costs under Rule 41(d) for costs, including attorney's fees, that ASB incurred in defending identical litigation commenced and later voluntarily dismissed by Moskowitz in the District of Connecticut. Joining other circuits, and reversing in part, the panel held that Rule 41(d) "costs" do not include attorney's fees as a matter of right. Accordingly, the district court abused its discretion in including attorney's fees in its award of costs under Rule 41(d). The panel explained that it did not decide if bad faith is sufficient to

---

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

allow a party to recover attorney's fees as "costs" under Rule 41(b), as bad faith was not alleged, much less proven, by ASB in the district court. The panel did not address whether attorney's fees are available under Rule 41(b) if the underlying statute so provides because, here, it was undisputed that the TCPA does not provide for the award of attorney's fees to the prevailing party.

Concurring in part, Judge Wardlaw concurred in Parts I, II, and III.A of the majority opinion, addressing the factual background, the procedural background, and the district court's grant of summary judgment. Dissenting in part, Judge Wardlaw wrote that she would vacate, rather than reverse, the district court's award of attorney's fees with instructions to first determine whether Moskowitz acted in bad faith before deciding to award fees. Judge Wardlaw wrote that in light of the overwhelming weight of authority, from Rule 41(d)'s text to its history to the Ninth Circuit's precedent, the court should join the Second, Third, Fourth, Fifth, and Seventh Circuits in concluding that Rule 41(d) provides for an award of attorney's fees as part of an award of costs where the underlying statute that is the basis of the original action would do so or in cases where the court finds that a plaintiff acted in bad faith, vexatiously, wantonly, or for oppressive reasons. Under this view, the district court should have determined whether Moskowitz acted in bad faith before awarding attorney's fees as part of "costs."

## COUNSEL

Aytan Y. Bellin, White Plains, New York, for Plaintiff-Appellant.

Steven D. Allison, Samrah R. Mahmoud, Sheila Z. Chen, and Stephanie V. Phan, Troutman Sanders LLP, Irvine, California, for Defendant-Appellee.

## OPINION

BEA, Circuit Judge:

Craig Moskowitz filed a class action against American Savings Bank, F.S.B. ("ASB"), in which he claimed ASB sent text messages to his mobile phone without the consent required by the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.  The district court in Hawaii granted summary judgment in favor of ASB.  The district court also granted ASB's motion for an award of "costs" under Federal Rule of Civil Procedure 41(d) ("Rule 41(d)"), for costs which ASB incurred in defending the identical litigation commenced by Moskowitz in the District of Connecticut, in which Moskowitz entered a voluntary dismissal, following which the Connecticut district court dismissed the case, "without costs to any party."  Finally, the Hawaii district court decided "costs" under Rule 41(d) included the attorney's fees incurred by ASB in defending the Connecticut litigation and therefore included such attorney's fees in the award of "costs."  Moskowitz appeals.

We have jurisdiction pursuant to 28 U.S.C. § 1291.  We affirm the district court's grant of summary judgment.  We also affirm the district court's award of costs, but we reverse the district court's award of attorney's fees as "costs" under Rule 41(d) as a matter of right.

## I. FACTUAL BACKGROUND

ASB offers mobile text banking services to customers, so that such customers can perform banking functions on their mobile phones. ASB maintains a "short code" for use for this service, 27244. A short code is a short (in this case, five digit) telephone number a business can use to send and receive text messages. ASB uses its short code to provide mobile banking services via text messages to customers who have enrolled their mobile phone numbers with ASB after using a multistep enrollment process.

ASB also receives text messages from mobile phone numbers of customers who are not enrolled in its program. These text messages might originate from ASB customers who wish to enroll, or from non-customers interested in ASB's services, or they might be accidental or intentionally mischievous misdials of the short code. ASB responds to these text messages automatically with a single message chosen from one of two standard responses. One response tells the sender of the text message how to stop communications from ASB, or how to contact ASB.[1] The other response is sent if the sender has texted "STOP." In

---

[1] ASB's first responsive text option was its Standard Non-Customer Response Message:

> ASB Hawaii Mobile
> Reply STOP to cancel alerts. Call 800.272.2566 or go to www.ASBhawaii.com. Msg freq depends on account settings. Msg&data rates may apply.

that case, ASB tells the sender he is not subscribed to ASB, and that he will not receive alerts.[2]

Moskowitz was not a customer of ASB during the relevant period, May through July 2016. During that time, however, Moskowitz's mobile phone sent 11 text messages to ASB's short code number. Ten of the text messages were unrelated to ASB or its services, and ASB replied with the first responsive text option. The remaining text message from Moskowitz to ASB consisted of the word "STOP" to which ASB replied with the second responsive text option. These reply texts were the only text messages ASB sent to Moskowitz's mobile phone.

## II. PROCEDURAL BACKGROUND

After he received these reply text messages, Moskowitz, a Connecticut resident, filed a TCPA federal class action suit in the District of Connecticut. Moskowitz claimed ASB's reply texts put the company afoul of a section of the TCPA which prohibits calling a mobile phone by use of automatic call generating capabilities absent the call recipient's prior express consent. ASB moved to dismiss the suit for lack of personal jurisdiction over it by the Connecticut district court. ASB argued that it is a Hawaii company without minimum contacts in Connecticut, and that Moskowitz's cell phone had an area code, 914, which applied to the New York geographic area, not Connecticut, such that ASB's text responses had gone to New York, not Connecticut; thus,

---

[2] ASB's second responsive text option was its Standard Unsubscribe Response Message:

> ASB Hawaii Mobile.
> You are not subscribed and will not receive alerts.
> To subscribe, call 800.272.2566 or go to www.ASBHawaii.com. Reply HELP for help.

ASB had not availed itself of Connecticut; hence, the district court did not have jurisdiction over ASB.

Moskowitz did not respond to ASB's motion to dismiss by answer or other responsive pleading.  Rather, he filed a notice of voluntary dismissal under Federal Rule of Civil Procedure 41(a) in the Connecticut district court.  ASB did not respond to Moskowitz's motion for voluntary dismissal, and ASB did not request the Connecticut district court award it attorney's fees per Federal Rule of Civil Procedure Rule 41(a) as a term of granting Moskowitz's motion.  The Connecticut district court then dismissed the case, in an order which did not award costs to either party. *Moskowitz v. Am. Sav. Bank, F.S.B.*, Civil No. 3:17-00307 AWT (D. Conn. May 19, 2017), ECF 24 ("The case is DISMISSED without prejudice and without costs to any party.").

Moskowitz then filed a suit in the District of Hawaii with the same claims, against the same parties, and based on almost identical factual allegations.[3]  ASB filed a motion for summary judgment, and it moved for costs under Rule 41(d) to recoup the costs it had incurred defending the earlier suit in Connecticut.

The district court in Hawaii granted ASB's motion for summary judgment, concluding that each text message from Moskowitz's mobile phone constituted prior express consent

---

[3] The district court in Hawaii noted that the case before it was "one of at least fifteen different class action based lawsuits that [Moskowitz] has filed alleging violations of the Telephone Consumer Protection Act, and one of the 'somewhere between ten and a hundred' lawsuits in which he has been a plaintiff." *Moskowitz v. Am. Sav. Bank, F.S.B.*, No. CV 17-00299 HG-RT, 2020 WL 61576, at *1 (D. Haw. Jan. 6, 2020) (collecting cases).

for each of ASB's reply texts to his mobile phone.  The district court also granted ASB's motion for costs under Federal Rule of Civil Procedure Rule 41(d) after finding that the two complaints were almost identical, and that the Connecticut litigation had not advanced the Hawaii case. Citing decisions by other district courts in our circuit, the district court awarded attorney's fees to ASB, holding that an award of costs under Rule 41(d) included attorney's fees, and that Rule 41(d) did not require a showing of "subjective bad faith, vexatiousness, or forum shopping" to award attorney's fees as "costs."

## III. DISCUSSION

Moskowitz appeals both the district court's grant of summary judgment in favor of ASB on his TCPA claim, and its inclusion of attorney's fees as part of its Rule 41(d) award of costs to ASB.

## A.  Grant of Summary Judgment

This court reviews a district court's grant of summary judgment de novo. *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1041 (9th Cir. 2017).

Moskowitz argues the district court erred in granting summary judgment for ASB because ASB did not have the consent required under the TCPA to send the responsive text messages to Moskowitz.  We have already determined that the type of message Moskowitz sent ASB provided the express consent required for each of ASB's responsive text messages.  *See Van Patten*, 847 F.3d at 1043–45.  "Express consent is not an element of a plaintiff's prima facie case but is an affirmative defense[,]" and it is a "complete defense" to a TCPA claim.  *Id*. at 1044.

The TCPA prohibits making calls to any cellular number by using a system that dials telephone calls automatically or by using an "artificial or prerecorded voice'" unless the caller received "prior express consent" from the recipient. 47 U.S.C. § 227(b).[4]   The TCPA does not define prior express consent.   In *Van Patten*, we adopted the FCC's interpretation of the text: that a person who knowingly releases his number consents to be called at that number, and that consent is "effective" where the responsive messages relate to the same subject or type of transaction as the messages that led to the response.   847 F.3d at 1044–45; *In*

---

[4] **47 U.S.C. § 227**

**(b) Restrictions on use of automated telephone equipment**

**(1) Prohibitions**

It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

**(A)** to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—

. . .

**(iii)** to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, . . .

*re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 F.C.C. Rcd. 8752, 8769 (Oct. 16, 1992).

Moskowitz argues that we have, and the *Van Patten* court had, discretion to refuse to employ the FCC's order interpreting "prior express consent." But *Van Patten* is a published opinion and binding precedent. *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc) (holding a published opinion may be overruled by a three-judge panel only when it is clearly irreconcilable with an intervening higher authority). Further, *Van Patten*'s reasoning—that providing a telephone number to a business as part of telephone communication to that business constitutes express consent to a responsive contact from that business within the scope of that communication—is even more directly applicable to the facts of this case than were the facts of *Van Patten*. 847 F.3d at 1046 (explaining that "the transactional context matters in determining the scope of a consumer's consent to contact").

In that case, Van Patten's former gym contacted him offering to reactivate his membership after he had cancelled the membership, but he had not revoked his prior express consent for the gym to contact him about his membership. *Id*. at 1046–47. In this case, unlike Van Patten, it was Moskowitz who initiated contact with ASB, and ASB that automatically replied to each contact with a single responsive text message to confirm receipt and provide information that the short code was ASB's and how to stop or continue communication. By sending text messages to ASB's short code, Moskowitz expressly consented to receive reply text messages. Each informative and confirmatory reply text message from ASB falls within the scope of Moskowitz's text message initiating contact, and

therefore, "the scope of [Moskowitz's] consent to contact." *Id*. at 1046.

Thus, the district court did not err in applying *Van Patten* and finding for ASB, and we affirm the grant of summary judgment for ASB.

## B.  "Costs" under Rule 41(d)

### 1.  Standard of Review

Moskowitz argues the district court abused its discretion by including attorney's fees in its award of "costs" to ASB under Rule 41(d).  "Awards of attorney's fees are generally reviewed for an abuse of discretion." *Thomas v. City of Tacoma*, 410 F.3d 644, 647 (9th Cir. 2005).  However, whether the term "costs" includes attorney's fees is a question of law that the court reviews de novo. *Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950, 955 (9th Cir. 2007).

### 2.  Background

Rule 41(d) allows a court to award "costs" incurred in litigation to a party if the plaintiff dismissed that litigation and then filed another suit based on the same claims, against the same defendant.[5]  The Ninth Circuit has not previously decided whether attorney's fees are available under Rule 41(d) as part of "costs," and other circuits have decided cases

---

[5] "If a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court: (1) may order the plaintiff to pay all or part of the costs of that previous action; and (2) may stay the proceedings until the plaintiff has complied."  Fed. R. Civ. P. 41(d).

in which attorney's fees were sought as part of Rule 41(d) "costs" in four ways.[6]

### (i) Attorney's fees are never available under Rule 41(d)

The Sixth Circuit has held that costs under Rule 41(d) do not include attorney's fees because the rule does not explicitly provide for them. "Where Congress has intended to provide for an award of attorney fees, it has usually stated as much and not left the courts guessing." *Rogers v. Wal-Mart Stores, Inc.*, 230 F. 3d 868, 874 (6th Cir. 2000), *cert. denied*, 532 U.S. 953 (2001). Of course, this unremarkable decision is based on the clear text of the rule, which provides that the court may award "costs," and mentions no other object which the court can award. "Costs" is a term which has a long-standing definition: the items which are listed in 28 U.S.C. §§ 1920, 1923.[7]     *See* COST, Black's Law

---

[6] The First Circuit, Eleventh Circuit, Federal Circuit, and D.C. Circuit have not yet decided this issue. The Eleventh Circuit recently noted that it had not decided whether "costs" under Rule 41(d) includes attorney's fees, and it declined to decide the issue because the court decided costs could not be awarded at all in the case before it. *Sargeant v. Hall*, 951 F.3d 1280, 1282 n.1 (11th Cir. 2020).

[7] 28 U.S.C. § 1920 provides:

> A judge or clerk of any court of the United States may tax as costs the following:
>
> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

28 U.S.C. § 1923 provides:

(a) Attorney's and proctor's docket fees in courts of the United States may be taxed as costs as follows:

$20 on trial or final hearing (including a default judgment whether entered by the court or by the clerk) in civil, criminal, or admiralty cases, except that in cases of admiralty and maritime jurisdiction where the libellant recovers less than $50 the proctor's docket fee shall be $10;

$20 in admiralty appeals involving not over $1,000;

$50 in admiralty appeals involving not over $5,000;

$100 in admiralty appeals involving more than $5,000;

Dictionary (11th ed. 2019) (defining "costs" as "[t]he charges or fees taxed by the court, such as filing fees, jury fees, courthouse fees, and reporter fees."). "Against this background, this Court understandably declared in 1967 that with the exception of the small amounts allowed by § 1923, the rule 'has long been that attorney's fees are not ordinarily recoverable [as costs] . . . .'" *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257 (1975) (citing recent cases in accord and quoting *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 717 (1967)).

---

$5 on discontinuance of a civil action;

$5 on motion for judgment and other proceedings on recognizances;

$2.50 for each deposition admitted in evidence.

(b) The docket fees of United States attorneys and United States trustees shall be paid to the clerk of court and by him paid into the Treasury.

(c) In admiralty appeals the court may allow as costs for printing the briefs of the successful party not more than:

$25 where the amount involved is not over $1,000;

$50 where the amount involved is not over $5,000;

$75 where the amount involved is over $5,000.

### *(ii) Attorney's fees are generally available under Rule 41(d)*

In *Evans v. Safeway Stores, Inc.*, 623 F.2d 121 (8th Cir. 1980) (per curiam), the Eighth Circuit allowed a $200 attorney fee without explanation as to its reasoning, but noted that it was "satisfied the district court did not abuse its discretion in awarding defendant-appellee $200 attorney fees," implying that attorney's fees are not available under Rule 41(d) as a matter of right, but only when such awards are within the district court's discretion. *Id.* at 122. However, it is unclear by what standard the Eighth Circuit relied upon in evaluating whether the district court had abused its discretion, and accordingly, we do not find this decision to be of any persuasive value.

### *(iii) Attorney's fees are available under Rule 41(d) if the underlying statute so provides*

The Third Circuit, Fourth Circuit, Fifth Circuit, and Seventh Circuit have each held that courts may award attorney's fees as costs under Rule 41(d) if the substantive statute underlying the claim provides for attorney's fees. *See Garza v. Citigroup Inc.*, 881 F.3d 277, 279 (3rd Cir. 2018); *Andrews v. Am.'s Living Ctrs., LLC*, 827 F.3d 306, 311 (4th Cir. 2016); *Portillo v. Cunningham*, 872 F.3d 728, 739 (5th Cir. 2017); *Esposito v. Piatrowski*, 223 F.3d 497, 501 (7th Cir. 2000). Each of these cases relied on *Marek v. Chesny*, 473 U.S. 1 (1985) to reach this holding:

> In *Marek*, the Supreme Court addressed whether attorneys' fees are awardable under Federal Rule of Civil Procedure 68, which allows for the imposition of "costs" when a plaintiff rejects a settlement offer that turns out to be greater than the ultimate judgment

at trial.  As with Rule 41(d), the drafters of Rule 68 neither defined the term "costs" nor explained its intended meaning, and made no reference to attorneys' fees.  After examining the plain text of Rule 68, the Court concluded legal fees may be awarded under Rule 68, but only where expressly authorized by some applicable statute or other authority.  This holding recognized the continued vitality of the American Rule and reaffirmed that there must be statutory authority or other authority to award attorneys' fees.

*Garza*, 881 F.3d at 282–83 (cleaned up); *but see Horowitz v. 148 S. Emerson Assocs. LLC*, 888 F.3d 13, 26 n.6 (2nd Cir. 2018).

### *(iv) Attorney's fees are available under Rule 41(d) if bad faith is proven*

The Second Circuit, Fourth Circuit, and Tenth Circuit have each held that courts have the discretion to award attorney's fees pursuant to Rule 41(d) whenever there is proof of bad faith, vexatiousness, wanton actions, or forum shopping in the filing of the original action.[8]  *See Horowitz v. 148 S. Emerson Assocs. LLC*, 888 F.3d 13, 25–26 (2nd Cir. 2018); *Andrews*, 827 F.3d at 311 (4th Cir. 2016);

---

[8] For convenience, unless otherwise noted, all uses of "bad faith" in this opinion mean "bad faith, vexatiousness, wanton actions, or forum shopping."

*Meredith v. Stovall*, 2000 WL 807355, at \*1 (10th Cir. June 23, 2000) (unpublished).[9]

In *Horowitz*, a Lanham Act case, the Second Circuit determined that the "scheme" of 41(d), "deterren[ce] to forum shopping and vexatious litigation," would be "substantially undermined" if attorney's fees were not recoverable under Rule 41(d) in cases of bad faith, as actions quickly filed and dismissed likely would not incur "expenses routinely recoverable as costs." *Horowitz*, 888 F.3d at 25–26 (cleaned up). The court determined the plaintiff had engaged in both forum shopping and vexatious litigation when it filed a case in a Georgia state court and then dismissed the case "immediately after" the state court "stated its belief that the action was meritless and that its filing likely contravened an order of another court, which was itself addressing substantially related claims." *Id*. at 23. The plaintiff then filed another similar suit in federal court in New York. In awarding attorney's fees under Rule 41(d), the Second Circuit concluded that "[t]his is the precise type of litigation tactic that Rule 41(d) is meant to deter." *Id*. Likewise, in the unpublished decision of *Meredith*, the Tenth Circuit held that "[t]he purpose of [Rule 41(d)] is to prevent the maintenance of vexatious law suits and to secure, where such suits are shown to have been brought repetitively, payment of costs for prior instances of such vexatious conduct," and held that the district court did not abuse its discretion in awarding attorney's fees as costs under Rule

---

[9] Regarding bad faith, the Third Circuit has distinguished between an award of attorney's fees under Rule 41(d) as "costs" and a federal court's inherent power to award attorney's fees under the bad faith exception to the American Rule, *Garza*, 881 F.3d at 284–85 (3rd Cir. 2018), an approach consistent with the Fifth Circuit. *Portillo*, 872 F.3d at 740 n.29 (5th Cir. 2017).

41(d). *Meredith*, 2000 WL 807355, at \*1 (cleaned up). And in *Andrews*, the Fourth Circuit awarded attorney's fees under Rule 41(d) by relying upon the general "inherent powers" of a federal court to award attorney's fees when the losing party has been found to have acted in bad faith. *Andrews*, 827 F.3d at 311–12 (citing *Alyeska*, 421 U.S. at 257–60); *but see Garza*, 881 F.3d at 284–85 (3rd Cir. 2018); *Portillo*, 872 F.3d at 740 n.29 (5th Cir. 2017).

### 3.  Discussion

We hold that Rule 41(d) "costs" do not include attorney's fees as a matter of right, and thus reverse the district court's award of attorney's fees in favor of ASB as a matter of right under Rule 41(d).  In so holding, we join every published circuit court opinion that has meaningfully considered this issue.[10]  As made clear in the foregoing

---

[10] *Horowitz*, 888 F.3d at 25 (2nd Cir. 2018) ("We thus have no difficulty in concluding that Rule 41(d) evinces an unmistakable intent for a district court to be free, in its discretion, to award attorneys' fees as part of costs.  Rule 41(d)'s purpose is clear and undisputed: to serve as a deterrent to forum shopping and vexatious litigation." (cleaned up)); *Garza*, 881 F.3d at 283–84 (3rd Cir. 2018) ("We therefore adopt the Underlying Substantive Statute Interpretation of Rule 41(d) and hold that 'costs' in Rule 41(d) includes attorneys' fees only where the underlying statute defines 'costs' to include attorneys' fees." (cleaned up)); *Andrews*, 827 F.3d at 311 (4th Cir. 2016) ("Rule 41(d) does not provide for an award of attorneys' fees as a matter of right; instead, a district court may award attorneys' fees under this rule only where the underlying statute provides for attorneys' fees.  A court may also, within its discretion, award attorneys' fees where it makes a specific finding that the plaintiff has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, a well-established exception to the American Rule." (cleaned up)); *Portillo*, 872 F.3d at 739 (5th Cir. 2017) ("We see no reason to treat Rule 41(d) differently: Fee awards are permitted under Rule 41(d) only if the underlying statute defines 'costs' to include fees."); *Rogers*, 230 F. 3d at 874 (6th Cir. 2000) ("We now hold that

discussion, "costs" is a term which has a long-standing definition that does not inherently include attorney's fees. Nothing in the text of Rule 41(d) compels a contrary reading of this well-understood term.

We do not here decide one way or the other if attorney's fees are available under Rule 41(d) if the underlying statute so provides.  This is because it is undisputed that the TCPA does not provide for the award of attorney's fees to the prevailing party.  Moreover, we do not here decide if bad faith is sufficient to allow a party to recover attorney's fees as "costs" under Rule 41(d), as bad faith has not been alleged, much less proven, by ASB in the district court below.  Accordingly, we decide no more than is necessary to resolve the facts of this case.[11]

## IV. CONCLUSION

We hold that the district court correctly granted summary judgment in favor of ASB, but it abused its discretion in including attorney's fees in its award of costs under Rule 41(d).

## AFFIRMED IN PART AND REVERSED IN PART.

---

attorney fees are not available under Rule 41(d)."); *Esposito*, 223 F.3d at 501 (7th Cir. 2000) ("Consequently, consistent with *Marek*, we hold that a party may recover reasonable attorneys' fees as part of its 'costs' under Rule 41(d) only where the underlying statute defines costs to include attorneys' fees.").

[11] "[I]f it is not necessary to decide more, it is necessary not to decide more." *N. Cnty. Commc'ns Corp. of Ariz. v. Qwest Corp.*, 824 F.3d 830, 838 n.2 (9th Cir. 2016) (quoting *PDK Labs. Inc. v. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment)).

WARDLAW, Circuit Judge, concurring in part, dissenting in part:

I concur in Parts I, II, and III.A of the majority opinion, but I would vacate, rather than reverse, the district court's award of attorney's fees with instructions to first determine whether Moskowitz acted in bad faith before deciding to award fees.[1] I write separately to explain why, in my view, our court should join the Second, Third, Fourth, Fifth, and Seventh Circuits in concluding that Federal Rule of Civil Procedure 41(d) provides for an award of attorney's fees as part of an award of costs "where the underlying statute" that is the basis of the original action would do so or in cases where the court finds that a plaintiff acted "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Andrews v. Am.'s Living Ctrs., LLC*, 827 F.3d 306, 311 (4th Cir. 2016) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59 (1975)); *see also Garza v. Citigroup Inc.*, 881 F.3d 277, 279, 284 (3d Cir. 2018); *Esposito v.*

---

[1] In its briefing before the district court, ASB argued that bad faith is not required in assessing the *merits* of an award of costs under Rule 41(d), but it did not address whether bad faith is a factor in assessing the *inclusion of attorney's fees* as costs. Mem. of Law in Support of Mot. for Rule 41(D) Costs and Stay of Proceedings at 6–7, 9–11, *Moskowitz v. Am. Sav. Bank, F.S.B.*, No. 1:17-CV-00299-HG-RT, (D. Haw. July 19, 2017), ECF No. 15-1. To the extent this constitutes waiver, "we may exercise discretion to consider a waived issue in certain cases, one such case being when the issue presented is a pure question of law," as is the case here. *Wong v. Flynn-Kerper*, 999 F.3d 1205, 1214 n.11 (9th Cir. 2021) (quoting *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 59 F.3d 902, 912 (9th Cir. 1995)). And let us remember that ASB was awarded attorneys' fees by the district court without having the additional burden of demonstrating bad faith—it was arguing for and won on an easier, albeit legally erroneous, path. We should correct this erroneous view of the law that resulted from a party's litigation tactics.

*Piatrowski*, 223 F.3d 497, 501–02 (7th Cir. 2000); *Horowitz v. 148 S. Emerson Assocs. LLC*, 888 F.3d 13, 25–26 (2d Cir. 2018); *Portillo v. Cunningham*, 872 F.3d 728, 738–39 (5th Cir. 2017) (concluding attorney's fees are available under Rule 41(d) where the underlying statute allows, but reserving the question whether they are available due to bad faith).**[2]**   Under this view, the district court should have determined whether Moskowitz acted in bad faith before awarding attorney's fees as part of "costs."

As the majority opinion states, the "'basic point of reference' when considering the award of attorney's fees is the bedrock principle known as the 'American Rule': Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Peter v. Nantkwest, Inc.*, 140 S. Ct. 365, 370 (2019) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252–53 (2010) (internal quotation marks omitted)); *see also Alyeska Pipeline*, 421 U.S. at 257 (referring to the presumption against shifting attorney's fees as a "general" rule).   "To determine whether Congress intended to depart from the American Rule presumption, the Court first 'look[s] to the language of the section' at issue." *Peter*, 140 S. Ct. at 372 (quoting *Hardt*, 560 U.S. at 254).   "While '[t]he absence of [a] specific reference to attorney's fees is not dispositive,' Congress must provide a sufficiently 'specific and explicit' indication of its intent to overcome the American Rule's presumption against fee shifting." *Id*. (quoting *Key Tronic Corp. United States*, 511 U.S. 809, 815 (1994), then *Alyeska Pipeline*, 421 U.S. at 260).   A review of the text and history

---

**[2]** In an unpublished disposition, the Tenth Circuit has also affirmed a district court's imposition of attorney's fees under Rule 41(d) due to a party's "vexatious conduct." *See Meredith v. Stovall*, 216 F.3d 1087, *1 (10th Cir. 2000) (unpublished table decision).

of Rule 41(d) evinces a sufficiently "specific and explicit" intent by Congress to provide courts with the discretion to depart from the American Rule and include attorney's fees as a part of an award of "costs" under Rule 41(d).

The operative version of Rule 41(d) provides:

> If a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court:
>
> > (1) may order the plaintiff to pay all or part of the costs of that previous action; and
> >
> > (2) may stay the proceedings until the plaintiff has complied.

This version of Rule 41(d) has been in effect since its amendment in 2007. Rule 41(d) has never defined "costs," and it must be conceded that at least this version of the Rule does not clearly demonstrate a departure from the American Rule, particularly in light of the ordinary definition of "costs." *See Costs*, *Black's Law Dictionary* (11th ed. 2019) ("The expenses of litigation, prosecution, or other legal transaction, esp. those allowed in favor of one party against the other."); *Peter*, 140 S. Ct. at 372 ("The complete phrase 'expenses of the proceeding' is similar to the Latin *expensæ litis*, or 'expenses of the litigation.' This term has long referred to a class of expenses commonly recovered in litigation to which attorney's fees did not traditionally belong."). But the Supreme Court has instructed us that our inquiry does not end there. In *Marek v. Chesny*, 473 U.S. 1 (1985), the Court addressed whether attorney's fees were

available as a component of "costs" under Rule 68 ("Offer of Judgment").[3]   Even though Rule 68 similarly does not define costs, the Court noted that the drafters of Rule 68 "were fully aware of the[] exceptions to the American Rule" that allowed courts to award attorney's fees as part of "costs" in some cases. *Id.* at 8.  Noting that the Advisory Committee Note to Rule 54(d) ("Costs; Attorney's Fees") "contains an extensive list of the federal statutes which allowed for costs in particular cases; of the 35 'statutes as to costs' set forth in the final paragraph of the Note," the Court stated "no fewer than 11 allowed for attorney's fees as part of costs."  *Id*.[4] Thus, "[a]gainst this background of varying definitions of 'costs,'" the Court concluded that it was "very unlikely that this omission was mere oversight" and Congress "intended to refer to all costs properly awardable under the relevant substantive statute or other authority." *Id*. at 8–9.

As with Rule 68, addressed in *Marek*, Congress did not define "costs" in Rule 41(d).  However, Congress evinced the requisite intent in the version of Rule 41(d) prior to its

---

[3] Notably, in *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 874 (6th Cir. 2000), in which the Sixth Circuit became the only circuit court to conclude that attorney's fees are never available under Rule 41(d), the court did not even mention *Marek*.

[4] When *Marek* was decided, Federal Rule of Civil Procedure 54(b) "did not differentiate between attorney's fees and other costs," and only when Rule 54(b) was amended in 1993 did it include "two subsections, one devoted to 'Costs Other than Attorney's Fees,' [Rule 54(d)(1)] and the other devoted to "Attorney's Fees, [Rule 54(d)(2)]."  *Adsani v. Miller*, 139 F.3d 67, 74 n.8 (2d Cir. 1998). The Advisory Committee Notes accompanying the amendment specified that the new subsection "relates to attorney's fees, whether or not denominated as 'costs.'"  *Id*. (cleaned up). Thus, the drafters of the Rules "clearly considered attorney's fees to be in some instances part of costs, both before and after the 1993 Amendments to Rule 54."  *Id*.

2007 amendment, and though the amendment removed some of the discretionary language, Congress made abundantly clear that the amendment was "stylistic only."**[5]**  Fed. R. Civ. P. 41(d) advisory committee's note to 2007 amendment. The pre-amendment version explicitly stated that "the court may make such order for the payment of costs of the action previously dismissed as it may deem proper."  Fed. R. Civ. P. 41(d) (1991) (amended 2007).  The 2007 amendment made that delegation of discretion implicit only by eliminating "as it may deem proper" but retaining the discretionary "may" language and making explicit that the court may order "all or part of" the costs of the previously dismissed action.  After all, use of the word "may" alone implies all the discretion required—"as it may deem proper" is simply redundant as no court would award costs that it thought were improper.

Since 2007, no court addressing whether attorney's fees are awardable under Rule 41(d) has raised the 2007 amendment as a basis for distinguishing earlier cases; therefore, discussions of Rule 41(d) in its pre-2007 format remain good law.  For example, in *Esposito*, the Seventh Circuit held that attorney's fees were available as part of an award of "costs" under the pre-2007 amendment Rule 41(d) "where the underlying statute that is the basis of the original action" would do so or for bad faith.  223 F.3d at 500 n.5, 501.  In 2016, the Fourth Circuit adopted the *Esposito*

---

**[5]** While the 2007 amendment may seem to have changed much of Rule 41(d)'s language, the Advisory Committee Notes make painstakingly clear that "[t]he language of Rule 41 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules. *These changes are intended to be stylistic only*."  Fed. R. Civ. P. 41(d) advisory committee's note to 2007 amendment (emphasis added).

approach in *Andrews*, despite the amendment to Rule 41(d) in the interim.  *Andrews*, 827 F.3d at 310–11.

Taking the text of both versions of Rule 41(d) into consideration, it is apparent that Congress intended to allow awards of attorney's fees under Rule 41(d) by providing courts with sufficient discretion in awarding the costs of the previously dismissed action.  Indeed, Congress granted courts discretion to award costs under Rule 41(d) "as [they] may deem proper"—language that supports a court's right to award attorney's fees if such an award was "proper" to disincentivize the conduct of vexatious litigants.[6]  Fed. R. Civ. P. 41(d) (1991).  Congress's intentional inclusion of this discretionary language sufficiently demonstrates the "specific and explicit" intent to overcome the typical American Rule.  *Peter*, 140 S. Ct. at 372 (quoting *Alyeska Pipeline*, 421 U.S. at 260).

A textual comparison of Rule 41(d) to Rule 54(d), which provides for awards of costs to the prevailing party, is useful to elucidate this point.  "[T]here is probably no reason for one to suppose that Congress intended that costs recoverable by the winning party under the provisions of Rule 54(d) would be exactly the same items of expense as are incurred by a party because of the actions of a party in dismissing an action and refiling it."  *Behrle v. Olshansky*, 139 F.R.D. 370, 373 (W.D. Ark. 1991).  "Rule 54(d) doesn't even require intervention by the court in imposing costs," and costs imposed under Rule 54(d) "are to be almost automatically calculated simply by reference to the provisions of 28 U.S.C.

---

[6] As discussed, Congress intended the elimination of "as it may deem proper" in Rule 41(d)'s 2007 amendment as purely a stylistic, non-substantive change, and so the phrase remains of import in considering the meaning of the rule.

§ 1920," with minimal discretion for the court. *Id*. at 374 (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 442 (1987)). By contrast, Rule 41(d) has no such restriction on the court's discretion, instead permitting the court to award costs "as it may deem proper." Fed. R. Civ. P. 41(d) (1991).

Indeed, the specific inclusion of the phrase "as it may deem proper" has led some courts to conclude Rule 41(d) allows for attorney's fees, including the first district court to address the question in our circuit. In *Esquivel v. Arau*, 913 F. Supp. 1382 (C.D. Cal. 1996), the district court persuasively reasoned that the text of Rule 41(d) allows for attorney's fees as a component of an award of "costs." *Id*. at 1388–92. The court began by correctly acknowledging "that the lack of a specific mention of 'attorneys' fees' in Rule 41(d) does not make such expenses nonrecoverable." *Id*. at 1390; *see Peter*, 140 S. Ct. at 372 ("[T]he absence of [a] specific reference to attorney's fees is not dispositive." (quoting *Key Tronic*, 511 U.S. at 815)). First, the court pointed out how Rule 41(a)(2)[7] "mentions neither 'costs' nor

---

[7] Rule 41(a)(2) provides:

> *By Court Order; Effect.* Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication. Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice.

As with Rule 41(d), Rule 42(a)(2) was amended in 2007 in a fashion that was to be considered "stylistic only," and its reference to "terms"

'attorneys' fees,' and speaks only of 'conditions' that a court may impose as it deems proper," but our court has nonetheless "consistently interpreted that provision to permit a federal court to impose a requirement of payment of a defendant's attorneys' fees as a condition to voluntary dismissal." *Esquivel*, 913 F. Supp. at 1390 (collecting cases); *see also Stevedoring Servs. of Am. v. Armilla Int'l.*, 889 F.2d 919, 921 (9th Cir. 1989) (observing that "costs and attorney fees are often imposed upon a plaintiff who is granted a voluntary dismissal under Fed. R. Civ. P. 41(a)(2)"). As the *Esquivel* district court reasoned, "[i]t seems consistent with the overall purpose of Rule 41, therefore, to understand the term 'costs' in Rule 41(d) as a means to designate recovery of litigation-related expenditures as the only 'condition' that a district court has the discretion to impose in situations where Rule 41(d) applies, rather than as a limit on the nature of expenses recoverable." *Esquivel*, 913 F. Supp. at 1390. Any other interpretation would create an illogical inconsistency where "a court has discretion to condition Rule 41(a)(2) voluntary dismissal without prejudice on payment of attorneys' fees, but that a court does *not* have discretion to exact the same payment from a plaintiff who has noticed a Rule 41(a)(1) dismissal in a previous case." *Id*. at 1391. Given that, "[i]n either situation, the plaintiff has required the defendant to incur expenses that may be substantial[,] [i]t would be anomalous to require the plaintiff to internalize the full costs of its conduct in one context but not the other." *Id*. Any interpretation of Rule 41(d) excluding attorney's fees would therefore be in plain tension, or even outright conflict, with

---

here does not make cases referencing "conditions" in the rule distinguishable.

our longstanding precedent about the availability of attorney's fees under Rule 41(a)(2).

It is true that courts rarely address the theoretical justification for awards of attorney's fees under any provision of Rule 41 in light of the presumption of the American Rule. However, this may be because Rule 41(d) and Rule 41(a)(2) are implicit codifications of the "bad faith" exception to the American Rule as articulated in *Alyeska Pipeline*. *See Esquivel*, 913 F. Supp. at 1390–91 (citing Rochelle Dreyfuss, *Promoting the Vindication of Civil Rights Through the Attorney's Fees Award Act*, 80 Colum. L. Rev. 346, 349 n. 22 (1980)). "Under this conception, Rule 41(d)'s requirement for payment of 'costs' by a plaintiff who dismisses an action and then brings the same action again evinces a legislative presumption that such conduct is abusive *per se*." *Id.* at 1391. Such an interpretation makes intuitive sense in light of Rule 41(d)'s "clear and undisputed" purpose: "to serve as a deterrent to forum shopping and vexatious litigation." *Horowitz*, 888 F.3d at 25 (quoting *Andrews*, 827 F.3d at 309).

Indeed, "the purposes of both Rule 41(d) and the 'bad faith' exception to the American Rule are the same, *i.e.*, to compensate a party who has incurred unnecessary expenditures because of an opponent's vexatious conduct during the course of litigation." *Esquivel*, 913 F. Supp. at 1391 (citing Jane P. Mallor, *Punitive Attorneys' Fees for Abuses of the Judicial System*, 61 N.C. L. Rev. 613, 644 (1983)). Such a conception also comports with the history of Rule 41, as the Supreme Court noted in the context of Rule 41(a)(1). *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 397 (1990) ("Rule 41(a)(1) was intended to eliminate 'the annoying of a defendant by being summoned into court in successive actions and then, if no settlement is arrived at,

requiring him to permit the action to be dismissed and another one commenced at leisure'" (quoting 2 American Bar Association, Proceedings of the Institute on Federal Rules, Cleveland, Ohio, 350 (1938)).  Thus, not only does the text of Rule 41(d) suggest a grant of discretion to award attorney's fees as a court may deem proper to deter vexatious litigants, interpreting it in this manner also fits it neatly within one of the two primary exceptions to the American Rule recognized by the Supreme Court.  Given this background, it is unsurprising that the overwhelming majority of district and circuit courts have concluded that attorney's fees are available under Rule 41(d), at least in some circumstances.

Even setting the text and history aside, Rule 41(d) would be rendered toothless if attorney's fees were excluded in all cases.  The costs associated with defending a lawsuit are overwhelmingly due to attorney's fees, not court fees.  For example, here the district court awarded $1,196.23 in non-fee costs, a drop in the bucket compared to the $17,848.20 in attorney's fees also awarded.  In *Horowitz*, the Second Circuit noted how "[a]part from attorneys' fees, the only costs paid" by the defendants in the previously withdrawn action "were a $15.00 charge for delivery of documents and a $60.48 charge for a transcript fee from a court reporter." *Horowitz*, 888 F.3d at 26.  One award actually deters litigants from abusing the system, the other is barely a slap on the wrist.  Interpreting Rule 41(d) in a manner that untethers it from its undisputed purpose would lead to absurd results in its application, and "statutory interpretations which would produce absurd results are to be avoided." *Ma v. Ashcroft*, 361 F.3d 553, 558 (9th Cir. 2004) (citing *United States v. Wilson*, 503 U.S. 329, 334 (1992)).  For that reason, the Second Circuit correctly concluded that "the entire Rule 41(d) scheme would be substantially undermined were the

awarding of attorneys' fees to be precluded." *Horowitz*, 888 F.3d at 25. However, an interpretation that permits awards of attorney's fees in all cases likely stretches the meaning of "costs" in Rule 41(d) too far in light of the Supreme Court's holding in *Peter*, 140 S. Ct. at 370.

Nevertheless, the overwhelming weight of authority, from Rule 41(d)'s text to its history to our precedent, suggests that attorney's fees are available as part of an award of costs under Rule 41(d) where the underlying statute of the original action provides for an award of fees or where the court finds that a plaintiff acted "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Andrews*, 827 F.3d at 311 (quoting *Alyeska Pipeline*, 421 U.S. at 258–59). Under this view, the district court should have determined whether Moskowitz acted in bad faith. If so, an award of attorney's fees incurred by American Savings Bank in defending the prior action may be proper.

Therefore, the district court should have determined whether Moskowitz acted in bad faith before it awarded attorney's fees to the bank, and we must vacate the award. For this reason, I dissent from the majority's outright reversal.